IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| FIRST FIDELITY CAPITAL MARKETS, INC., | ) ) ) | |
| Plaintiff, | ) ) | NO. 3:17-cv-01080 |
| v. | ) ) | JUDGE CAMPBELL |
| RELIANT BANK, COMMERCE UNION BANCSHARES, INC. and RELIANT MORTGAGE VENTURES, LLC d/b/a RELIANT BANK MORTGAGE SERVICES, | ) ) ) ) ) ) | MAGISTRATE JUDGE NEWBERN |
| Defendants. | ) | |

**MEMORANDUM**

Pending before the Court is Plaintiff First Fidelity Capital Markets, Inc.'s Motion for Summary Judgment (Doc. No. 63). Defendants filed a response (Doc. No. 72) and Plaintiff filed a reply (Doc. No. 77). For the reasons stated below, Plaintiff's Motion for Summary Judgment is DENIED.

I. **FACTUAL BACKGROUND**

Plaintiff First Fidelity Capital Markets, Inc. ("First Fidelity") is a boutique advisory firm that helps companies fix residential mortgage lending operations and increase profitability. (Doc. No. 64 at 1.) In November 2014, First Fidelity engaged in discussions with Defendant Reliant Mortgage Ventures, LLC d/b/a Reliant Bank Mortgage Services ("Reliant") regarding forming a business relationship.[1] (Doc. No. 73 at ¶ 1.) First Fidelity sent a draft consulting agreement to Reliant dated November 17, 2014, which set First Fidelity's compensation at 40 basis points on

---

[1] At the time, the parties were discussing a different potential hire than those who are the subject of the current dispute.

1

the amount of loans funded by the mortgage bankers proposed by First Fidelity and hired by Reliant. (*Id*. at ¶ 4.) Reliant never signed the draft agreement, at least in part because it viewed the compensation proposal as too high. (Doc. No. 78 at ¶¶ 4-5.) On December 1, 2015, First Fidelity sent Reliant an amended consulting agreement without the 40 basis point compensation, leaving the amount of compensation to be "further outlined in a separate addendum." (*Id*. at ¶ 6.) The parties never agreed on the services to be provided by First Fidelity and did not execute the December 1, 2015 agreement. (*Id*. at ¶¶ 7-8.)

Communications between the First Fidelity and Reliant ceased until mid-January 2015, when the parties began discussions centered around two mortgage bankers: Kyle Zotter and Mark Considine. In connection with the renewed discussions, on January 25, 2015, First Fidelity and Reliant entered into the Reciprocal Confidentiality and Non-disclosure Agreement (the "Agreement"). (Doc. No. 66-3.)

Two provisions of the Agreement are at issue: the non-disclosure clause and the non-circumvention clause. The non-disclosure clause requires the parties to keep certain information confidential and to disclose confidential information only within their organizations on a need to know basis. (*Id*. at 2, section 2.1.) The Agreement specifically provides that the parties will not "disclose to any person that the Confidential Information has been made available to it or that the Discussions are taking place." (*Id*.)

The non-circumvention clause states:

> The Parties agree that no effort shall be made to circumvent this Agreement including, in violation of this Agreement, any current or proposed relationships with any First Fidelity Clients or third parties which are formally provided to Reliant Bank Mortgage Services as potential employment candidates by First Fidelity, as part of this agreement.

First Fidelity introduced Zotter and Considine as potential employment candidates and provided Reliant with their resumes and information about their mortgage origination business. (Doc. 73 at ¶ 11; Doc. No. 80-1 at 3; Doc. No. 80-2 at 1.)

A few days after executing the Agreement on January 25, 2015, Reliant learned that Elliot Jacobs, CEO of First Fidelity, told Reliant's Group Manager, Sam Preis, about the discussions regarding the potential hire of Zotter and Considine. (Doc. No. 75-1 at ¶ 16.) The parties continued their discussions through at least February 4, 2015. (Doc. No. 80-5 at 7.) By February 6, 2015, the parties had stopped their discussions. (Doc. No. 75-8 at 2.)

In late March and early April 2015, Reliant hired Zotter and Considine directly. (Doc. No. 73 at ¶ 13.) The parties dispute who among Zotter, Considine, and Reliant initiated the contact after the discussions with First Fidelity ended. (*See* Doc. No. 75-1 at ¶¶ 19-23; Doc. No. 79-1 at 1.) Zotter worked for Reliant as Senior Mortgage Loan Originator from March 23, 2015 through March 31, 2016. Considine worked for Reliant as Senior Mortgage Loan Originator from April 8, 2015 through March 31, 2016. (*Id.* at ¶ 15.) While working for Reliant, Zotter and Considine originated $89,936,483 and $111,394,117 in residential mortgage loans, respectively. (*Id.* at ¶ 18.)

Plaintiff First Fidelity filed this action against Reliant alleging breach of contract and moved for summary judgment. (Doc. No. 63.)

## II. STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party bringing the summary judgment motion has the initial burden of informing the Court of the basis for its motion and identifying portions of the record that demonstrate the absence of a genuine dispute over material facts. *Rodgers v. Banks,* 344 F.3d 587, 595 (6th Cir. 2003). The moving party may satisfy this burden by presenting affirmative evidence that negates an

3

element of the non-moving party's claim or by demonstrating an absence of evidence to support the nonmoving party's case. *Id.*

In evaluating a motion for summary judgment, the court views the facts in the light most favorable for the nonmoving party and draws all reasonable inferences in favor of the nonmoving party. *Bible Believers v. Wayne Cty., Mich.*, 805 F.3d 228, 242 (6th Cir. 2015); *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 570 (6th Cir. 2003). The Court does not weigh the evidence, judge the credibility of witnesses, or determine the truth of the matter. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Rather, the Court determines whether sufficient evidence has been presented to make the issue of material fact a proper jury question. *Id.* The mere scintilla of evidence in support of the nonmoving party's position is insufficient to survive summary judgment; instead, there must be evidence of which the jury could reasonably find for the nonmoving party. *Rodgers* 344 F.3d at 595.

### III.    ANALYSIS

A breach of contract claim requires: (1) a valid contract; (2) non-performance by one party amounting to breach of contract; and (3) damages. *Abruzzo v. Haller*, 603 So. 2d 1338, 1340 (Fla. Dist. Ct. App. 1992). "The intent of the parties governs contract interpretation and that intent is to be determined from the plain language of the agreement and the everyday meaning of the words used. Dictionaries are commonly consulted to ascertain the plain meaning of words used in a contract. The entire contract should be considered and provisions should not be considered in isolation to other provisions of the contract. Finally, the contract should not be interpreted to achieve an absurd result." *Burlington & Rockenbach, P.A. v. Law Offices of E. Clay Parker*, 160 So. 3d 955, 958 (Fla. Dist. Ct. App. 2015) (internal quotations and citations omitted).

First Fidelity claims that Reliant breached the Non-Circumvention Clause of the Agreement when it hired Zotter and Considine less than two months after discussions with First

Fidelity had ceased. The parties do not dispute the existence of the Agreement or that the Agreement is government by Florida law. (*See* Doc. No. 73 at ¶¶ 8-10; Doc. No. 66-3 at 3.)

The contract states:

> The Parties agree that no effort shall be made to circumvent this Agreement including, in violation of this Agreement, any current or proposed relationships with any First Fidelity Clients of third parties which are formally provided to Reliant Bank Mortgage Services as potential employment candidates by First Fidelity, as part of this agreement. (*Id.*)

The plain language in the non-circumvention clause prohibits making an effort "to circumvent" the Agreement. Given the disputed facts, a determination of what constitutes an "effort to circumvent [the] Agreement" is a question of fact for the jury. Moreover, Plaintiff has not submitted evidence showing Reliant hired Zotter and Considine to circumvent, i.e. for the purpose of circumventing, the Agreement. The Court finds Plaintiff has not established as a matter of law Reliant breached the non-circumvention clause of the Agreement and therefore, summary judgment on this claim is DENIED.

Because Plaintiff has not established a breach of the non-circumvention clause, the Court need not consider Reliant's defense that Plaintiff's first breach terminated the parties' obligations under the agreement or consider the parties' arguments on damages.

## IV.  CONCLUSION

For the reasons stated, Plaintiff has not conclusively established a breach of contract. Therefore, the Motion for Summary Judgment is DENIED.

It is so **ORDERED**.

_____
WILLIAM L. CAMPBELL, JR.
UNITED STATES DISTRICT JUDGE