UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| FIRST FIDELITY CAPITAL MARKETS INC., <br><br> Plaintiff, <br><br> v. <br><br> RELIANT BANK, et al., <br><br> Defendants. | Case No. 3:17-cv-01080 <br><br> Judge William L. Campbell, Jr. <br> Magistrate Judge Alistair E. Newbern |

# **MEMORANDUM ORDER**

Plaintiff First Fidelity Capital Markets Inc. has moved for leave to amend its complaint (Doc. No. 93). Defendants Reliant Bank, Commerce Union Bancshares, Inc., and Reliant Mortgage Ventures, LLC d/b/a Reliant Bank Mortgage Services (collectively "Reliant") have responded in opposition (Doc. No. 96). First Fidelity has filed a reply. (Doc. No. 97.) Having considered the parties' arguments, and for the reasons that follow, First Fidelity's motion for leave to amend will be granted.

**I.     Relevant Background**

First Fidelity is a boutique mortgage industry advisory firm based in New Jersey that provides consulting services to banks and other mortgage lenders. (Doc. No. 1.) The Reliant defendants are based in Tennessee. (*Id.*) First Fidelity filed this action on July 24, 2017, invoking the Court's diversity jurisdiction and asserting claims for breach of contract, breach of the covenant of good faith and fair dealing, and quantum meruit and unjust enrichment. (*Id.*) According to First Fidelity, Reliant Bank Mortgage Services President Roger Williams began negotiating with First Fidelity in the fall of 2014, seeking First Fidelity's assistance identifying and recruiting new loan

officers, among other things. (*Id.*) As part of these negotiations, First Fidelity sent Williams a draft consulting agreement that set First Fidelity's compensation at forty basis points on the total amount of loans generated by candidates that First Fidelity recruited and Reliant hired. (*Id.*) Reliant did not sign the consulting agreement. (Doc. No. 73.)

In January 2015, First Fidelity and Reliant signed a Reciprocal Confidential and Non-Disclosure Agreement (NDA) related to their discussions about two First Fidelity clients whom Reliant was interested in hiring, mortgage bankers Kyle Zotter and Mark Considine. (Doc. No. 1.) The NDA includes a non-circumvention clause that provides:

> The Parties agree that no effort shall be made to circumvent this Agreement including, in violation of this agreement, any current or proposed relationships with any First Fidelity Clients or third parties which are formally provided to Reliant Bank Mortgage Services as potential employment candidates by First Fidelity, as part of this agreement.

(*Id.* at PageID# 3, ¶ 13.) First Fidelity formally presented Zotter and Considine to Reliant as employment candidates. (Doc. No. 1.) In March 2015, Williams recruited and hired Zotter and Considine directly and did not compensate First Fidelity. (*Id.*) First Fidelity's complaint alleges that this was in violation of the NDA and seeks compensatory and punitive damages. (*Id.*)

Reliant answered First Fidelity's complaint and argued, among other things, that First Fidelity breached the NDA first. (Doc. No. 14.) After Reliant filed a third-party complaint against Zotter and Considine with the Court's leave, the Court entered a revised amended case management order setting February 14, 2019, as the deadline for filing any motions to amend the pleadings; June 22, 2019 as the deadline to depose all fact witnesses; and July 17, 2019 as the deadline for filing dispositive motions. (Doc. No. 84.)

On March 13, 2019, First Fidelity deposed Stephen Bennett who previously worked for Williams at Reliant. (Doc. No. 95-1.) Bennett testified that he was on a phone call with Williams and First Fidelity during which Williams offered to pay First Fidelity a fee lower than 40 basis

points for recruiting Zotter and Considine and First Fidelity refused. (*Id.*) Williams ended the call and later told Bennett that he was not going to pay First Fidelity and planned to hire Zotter and Considine directly. (*Id.*) Bennett told Williams that it was a bad idea to hire them directly because of the signed NDA and the non-circumvention clause, but Williams said that he did not care and was going to hire them anyway. (*Id.*) Williams told Bennett to start the hiring process for Zotter and Considine and not to talk to anyone about the NDA. (*Id.*) Bennett's testimony appears to conflict with Williams's sworn statements that (1) Reliant ended its relationship with First Fidelity because it believed that First Fidelity had breached the NDA first and (2) that Reliant "made no effort to contact Considine and Zotter after our relationship with First Fidelity ended. Instead it was Considine and Zotter who approached us independent of First Fidelity and requested a meeting." (Doc. No. 75-1, PageID# 411, ¶ 20.)

On March 26, 2019, First Fidelity filed a motion for leave to amend its complaint to include a new claim for fraud against Reliant and to increase its claims for punitive damages based on that alleged fraud. (Doc. No. 93.) In compliance with this Court's Local Rules, First Fidelity attached a proposed amended complaint to its motion. (Doc. No. 93-1.) First Fidelity argues that good cause exists to modify the February 14, 2019 deadline for amended pleadings because key facts underlying its fraud claim did not come to light until Bennett's deposition on March 13, 2019, and it therefore could not have moved for leave to add this claim before the deadline passed. (Doc. No. 94.) First Fidelity further argues that Reliant will not be prejudiced by the amendment. (*Id.*) Reliant opposes the motion, arguing that the motion is untimely and that First Fidelity's fraud claim is "contrived[.]" (Doc. No. 96, PageID# 746.) However, Reliant concedes that Bennett's testimony "contradicted deposition testimony given by . . . Williams on certain points." (*Id.* at PageID# 748.) First Fidelity replies that it promptly filed the motion to amend following Bennett's

3

deposition and points out that Reliant "ha[s] not argued" and cannot show "that the fraud claim is frivolous or that adding the claim would be futile." (Doc. No. 97, PageID# 753.)

## II.     Legal Standard

Federal Rule of Civil Procedure 15(a) typically governs motions to amend the pleadings before trial. Fed. R. Civ. P. 15(a). However, where, as here, a motion to amend is filed after the deadline set forth in the Court's scheduling order, the standards of Rule 15(a) and Rule 16(b) apply. *See Leary v. Daeschner*, 349 F.3d 888, 909 (6th Cir. 2003). Rule 16(b) provides that the deadline for amendment of pleadings set forth in the Court's scheduling order can be extended "only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). This rule was "designed to ensure that 'at some point both the parties and the pleadings will be fixed.'" *Leary*, 349 F.3d at 906 (quoting Fed. R. Civ. P. 16 advisory committee's note to 1983 amendment). Thus, "[o]nce the scheduling order's deadline passes, a plaintiff first must show good cause under Rule 16(b) for failure earlier to seek leave to amend before a court will consider whether amendment is proper under Rule 15(a)." *Id.* at 909. The "good cause" requirement in Rule 16 is only satisfied where the movant shows "that the original deadline could not reasonably have been met despite due diligence and that the opposing party will not suffer prejudice by virtue of the amendment." *Ross v. Am. Red Cross*, 567 F. App'x 296, 306 (6th Cir. 2014).

If the Court finds that good cause exists, it then considers whether amendment is appropriate under Rule 15. Rule 15(a)(2) provides that district courts should "freely" grant a motion for leave to amend a pleading "when justice so requires." Fed. R. Civ. P. 15(a)(2). This "mandate" flows from the principle that a plaintiff "ought to be afforded an opportunity to test [their] claim on the merits" where "the underlying facts or circumstances relied upon . . . may be a proper subject of relief . . . ." *Foman v. Davis*, 371 U.S. 178, 182 (1962). Thus, absent "any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the

movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc.—the leave sought should, as the rules require, be 'freely given.'" *Leary*, 349 F.3d at 905 (quoting *Foman*, 371 U.S. at 182). A proposed amendment is futile when it would not survive a motion to dismiss under Rule 12(b)(6). *Miller v. Calhoun Cty.*, 408 F.3d 803, 817 (6th Cir. 2005); *Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 420 (6th Cir. 2000). Although the Sixth Circuit "reviews denials of leave to amend only for abuse of discretion," its case law "manifests 'liberality in allowing amendments to a complaint.'" *Newberry v. Silverman*, 789 F.3d 636, 645 (6th Cir. 2015) (quoting *Janikowski v. Bendix Corp.*, 823 F.2d 945, 951 (6th Cir. 1987)).

**III.     Analysis**

The Court concludes that good cause exists under Rule 16(b)(4) to modify the case management order because First Fidelity could not reasonably have met the initial deadline for amending pleadings despite its due diligence and Reliant will not be unduly prejudiced by the proposed amendment. *See Ross*, 567 F. App'x at 306.

First Fidelity has shown that it could not reasonably have met the February 14, 2019 deadline to request leave to amend because, despite its diligent prosecution of this case, it did not have the information necessary to support a claim for fraud until after it deposed Bennett on March 13, 2019. *See Auto-Owners Ins. v. Aspas*, No. 3:16-cv-189, 2018 WL 1403902, at *1–2 (W.D. Ky. Mar. 19, 2018) (finding good cause to modify scheduling order where depositions held one day before amended pleading deadline "provided the facts upon which [the plaintiff's] proposed amendment [was] based" and plaintiff "sought leave to amend promptly upon receiving transcripts of [those] . . . depositions"). While Reliant argues generally that First Fidelity "has had nearly two years to develop its claims through investigation and discovery" (Doc. No. 96, PageID# 744), it has not argued that First Fidelity unduly delayed Bennett's deposition and the Court finds that First

5

Fidelity did not do so. The parties jointly agreed to schedule Bennett's deposition for March 13, 2019, which fell more than three months before the June 22, 2019 deadline for deposing fact witnesses. Nor has Reliant explained how First Fidelity could have discovered the facts underlying Williams's alleged fraud before hearing Bennett's deposition testimony that contradicted Williams's prior sworn statements in this action.

Reliant wrongly suggests that this court's decision in *Griffith v. Whitesell*, No. 3:08-0385, 2009 WL 2882949 (M.D. Tenn. Aug. 29, 2009), supports denying First Fidelity's motion to amend. (Doc. No. 96.) In *Griffith*, the court denied a motion for leave to amend after finding that the pro se plaintiff had failed to provide any evidence or explanation as to "why he could not have moved to amend his complaint to add [new] defendants and increase his punitive damages claim earlier" and "waited more than eight[ ] months" after the deadline to move to amend had passed, "by which time discovery had closed[.]" 2009 WL 2882949, at *5. Here, by contrast, First Fidelity has offered detailed explanation and argument as to why it could not move to amend until after Bennett's deposition, and it filed its motion within fourteen days of that deposition, which was just forty days after the deadline to amend in the case management order and more than three months before the close of discovery. (Doc. Nos. 84, 94, 97.)

Reliant's citation of *Wade v. Knoxville Utilities Board*, 259 F.3d 452 (6th Cir. 2001), is similarly unpersuasive. (Doc. No. 96.) In *Wade*, the Sixth Circuit cited *Duggins v. Steak 'N Shake, Inc.*, 195 F.3d 828 (6th Cir. 1999), for the unremarkable proposition that, "[w]hen amendment is sought at a late stage in the litigation, there is an increased burden to show justification for failing to move earlier." *Wade*, 259 F.3d at 459 (citing *Duggins*, 195 F.3d at 834). The "late stage" at issue in *Duggins* was "after discovery had passed, the dispositive motion deadline had passed, and a motion for summary judgment had been filed." *Duggins*, 195 F.3d at 834. First Fidelity filed its

6

motion to amend before the discovery and dispositive motion deadlines passed (Doc. No. 84) and before Reliant filed its pending motion for summary judgment (Doc. No. 124).[1] *Wade* and *Duggins* are therefore inapposite.[2]

First Fidelity has also shown that Reliant will not be unduly prejudiced by the proposed amendment. First Fidelity argues that Reliant knew or should have known that Bennett would contradict Williams's version of events because Bennett was Reliant's witness (Doc. No. 94)—First Fidelity deposed Bennett because Reliant identified him in its initial disclosures as a person with knowledge of discoverable facts (Doc. No. 96). First Fidelity argues that the parties would have engaged in further discovery regarding Bennett's and Williams's conflicting testimony regardless of whether First Fidelity sought to add a fraud claim because the truth or falsity of Williams's testimony is central to First Fidelity's other claims for relief. (Doc. No. 94.) Reliant argues generally that "[a]dding a fraud claim will likely increase the parties' discovery burdens[,]" but it does not directly respond to First Fidelity's assertion that Bennett's testimony would have sparked additional discovery regardless of whether First Fidelity moved to amend. (Doc. No. 96, PageID# 746.)

The Court finds that allowing First Fidelity to add a fraud claim in light of Bennett's testimony will not require Reliant "to expend significant additional resources to conduct discovery and prepare for trial[.]" *Phelps v. McClellan*, 30 F.3d 658, 663 (6th Cir. 1994). To the extent that

---

[1] First Fidelity filed the motion to amend after filing its own early motion for summary judgment (Doc. No. 63).

[2] Reliant cites *Stewart v. King*, No. 3:09-cv-21, 2011 WL 237678, at *7 (M.D. Tenn. Jan. 24, 2011), in support of the proposition that "substitution of counsel is insufficient grounds for granting a motion to amend where the parties had previously agreed to a revised scheduling order." (Doc. No. 96, PageID# 745.) Because First Fidelity has not argued that substitution of counsel supports its motion to amend here, *Stewart* is not relevant to the Court's analysis.

granting First Fidelity's motion for leave to amend might require the Court to adjust case management deadlines, any prejudice resulting from such adjustments is not attributable to First Fidelity.

Having found that good cause exists to allow amendment under Rule 16(b)(4), the Court next considers whether amendment is warranted under Rule 15(a)(2). The Court has already found that First Fidelity acted diligently and did not unduly delay filing its motion to amend and that Reliant will not be unduly prejudiced by the amendment. While Reliant characterizes First Fidelity's fraud claim as "reckless and illogical" and asserts that the claim cannot "withstand scrutiny" (Doc. No. 96, PageID# 747), Reliant has not developed any argument or cited any legal authority that First Fidelity's proposed fraud claim would not survive a motion to dismiss and is therefore futile. The Sixth Circuit has repeatedly explained that "[i]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in [a] skeletal way, leaving the court to put flesh on its bones." *United States v. Fowler*, 819 F.3d 298, 309 (6th Cir. 2016) (second alteration in original) (quoting *El-Moussa v. Holder*, 569 F.3d 250, 257 (6th Cir. 2009)). Accordingly, Reliant has waived any argument that the proposed amendment should be denied on futility grounds.

Similarly, while Reliant implies that First Fidelity is acting in bad faith and asserts that "[t]he real driving force behind [First Fidelity's] [m]otion is money" (Doc. No. 96, PageID# 746), Reliant has not cited any authority to support its contention that First Fidelity's proposed increase of its existing claims for punitive damages is made for an improper motive. This argument is particularly weak in light of Reliant's failure to argue that the proposed fraud claim is futile. Reliant's argument that the motion to amend should be denied because First Fidelity's fraud claim

relies on some of the same operative facts as its other claims fares no better. The Sixth Circuit explained in *Moore v. City of Paducah* that the fact that a "newly asserted claim would be supported by facts set forth in the original claim" weighs in favor of granting leave to amend, not against. 790 F.2d 557, 561 (6th Cir. 1986) (discussing *Tefft v. Seward*, 689 F.2d 637, 639 (6th Cir. 1982)). Finally, this is First Fidelity's first requested amendment and repeated failure to cure deficiencies by previous amendments is not a concern.

Consequently, the Court finds that First Fidelity's proposed amendment is warranted under Rules 15 and 16.

**IV.    Conclusion**

For the reasons above, First Fidelity's motion for leave to amend (Doc. No. 93) is GRANTED. The Clerk of Court is DIRECTED to enter the amended complaint (Doc. No. 93-1) as a separate docket entry. The Court will set a case management conference by separate order to determine the impact of the amended complaint on Reliant's pending motion for summary judgment (Doc. No. 124) and to reset any case management deadlines, if necessary.

It is so ORDERED.

ALISTAIR E. NEWBERN
United States Magistrate Judge